**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**MARK TAPP** **PLAINTIFF**

**v.** **CASE NO. 3:25-CV-00018-BSM**

**ROBERT LEONARD,** individually and in his official capacity; **DALTON WALLACE**, individually and in his official capacity; and the **CITY OF BATESVILLE** **DEFENDANTS**

**ORDER**

Dalton Wallace's unopposed motion for summary judgment [Doc. No. 20] is granted. The motion for summary judgment filed by the City of Batesville and Robert Leonard [Doc. No. 27] is granted on Mark Tapp's claims against the City and against Leonard in his official capacity and it is denied on Tapp's claims against Leonard in his individual capacity.

I. BACKGROUND

While wearing fitted jogging shorts and no shirt, Mark Tapp stopped at a gas station and sat in his car talking on the phone. Statements of Undisputed Material Facts, Doc. No. 33 (SUMF) ¶¶ 4–5. While sitting in his car, Tapp saw a woman looking at some flowers sitting in a trash can, so he exited his car, picked the flowers out of the can, and attempted to take them to her. *Id.* ¶ 7; *see* Mot. Summ. J. Dalton Wallace (Wallace MSJ), Doc. No. 20, Ex. 2, 911 Audio. The woman waved him away, and Tapp went back to his car. SUMF ¶ 7. Shortly thereafter, the Independence County Dispatch Center received a call from a woman stating that a man who appeared to be wearing only underwear was at the gas station.

*Id.* ¶10; *see* 911 Audio. The woman stated that the man was friendly but the interaction was "weird" and requested that someone go check it out. 911 Audio.

Batesville Police Lieutenant Robert Leonard heard the dispatcher relay the information, responded to the scene, and asked Tapp to hang up his phone call. *Id.* ¶ 13; *see* City Defs.' Statement Undisputed Material Facts, Doc. No. 28, Ex. 3, Body Camera Footage at 00:18–00:20. Leonard asked for Tapp's name and identification several times, and Tapp declined to give the information. *Id.* at 1:01–2:08. Tapp asked to leave, but Leonard stated that, although Tapp was not under arrest, he could not leave because Leonard was trying to investigate a 911 call. SUMF ¶ 19. When Tapp started his engine to prepare to leave, Leonard ordered Tapp to step out of his car several times, but Tapp did not comply. *Id.* ¶¶ 20–21; *see* also Body Camera Footage at 1:55, 2:12–2:16, 2:26–2:30, & 2:44–3:33. While Leonard attempted to forcibly remove Tapp from the car, Independence County Deputy Dalton Wallace arrived and assisted in removing Tapp from his car. Body Camera Footage at 3:33–3:37. Tapp was placed on the ground and handcuffed. After several minutes elapsed, he was taken off the ground and Leonard informed Tapp that he was under arrest. *Id.* at 3:48 & 6:13.

Tapp was taken to the Independence County jail and charged with obstructing governmental operations, disorderly conduct, and resisting arrest. Of course, given the undisputed facts, he was acquitted on all counts. SUMF ¶¶ 25–26. Tapp is suing Leonard and Wallace in their individual and official capacities for unlawful seizure, unlawful arrest, excessive force, and assault and battery. Tapp is suing the City of Batesville for municipal

liability and defendants are moving for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Wallace's unopposed motion for summary judgment is granted. *See* Doc. No. 35*; see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). The motion for summary judgment filed by the City and Leonard is denied on the individual capacity claims against Leonard and granted on the claims against the City and the official capacity claims against Leonard.

### A. Individual Capacity Claims

Summary judgment is denied on all of Tapp's individual capacity claims.

#### *1. Unlawful Seizure*

Tap asserts that he was unlawfully seized in violation of the Fourth Amendment. To prove his claim, he must show that Leonard lacked arguable reasonable suspicion that criminal activity was afoot. *Robbins v. City of Des Moines*, 984 F.3d 673, 679 (8th Cir. 2021). The totality of the circumstances are considered in determining whether Leonard had arguable reasonable suspicion upon which to seize Tapp and this requires "at least some level of objective justification" for the seizure. *De La Rosa v. White*, 852 F.3d 740, 744 (8th Cir. 2017) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The inquiry is based on common sense judgments about human behavior and need not rule out innocent conduct. *Chestnut v. Wallace*, 947 F.3d 1085, 1088 (8th Cir. 2020). Arguable reasonable suspicion exists when a reasonable officer in the same position could have believed that reasonable suspicion existed. *Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019).

Leonard asserts that he had at least arguable reasonable suspicion to detain Tapp based on a reliable 911 call and dispatch's report that a man in his underwear approached a woman with flowers at a gas station. City Defs.' Br. Supp. Mot. Summ. J. (Def. Br.) at 5. Leonard further asserts that Tapp refusing to identify himself, starting the car's engine, and refusing to exit the vehicle provided reasonable suspicion as well. *Id.* The problem with these arguments is that no criminal conduct was described on the 911 call or relayed by dispatch. *See* 911 Audio; SUMF ¶ 13. Indeed, the cases cited by defendants regarding informant reliability involve callers who actually reported that they observed illegal conduct. *See Navarette v. California*, 572 U.S. 393, 399 (2014) (caller reported she had been run off the road by a driver); *U.S. v. Winborn*, 111 F.4th 910, 913 (8th Cir. 2024), cert. denied, 145

S. Ct. 1107 (2025) (three different callers reported gunshots, masked suspects, and a vehicle driving off in the same area). While it is true that wholly legal conduct can support reasonable suspicion, defendants have cited no authority suggesting that Tapp's refusal to identify himself and get out of his vehicle, without some other indicia of criminal behavior, provided Leonard with reasonable suspicion that criminal activity was afoot, when no identifiable criminal activity was ever reported. *Illinois v. Gates*, 462 U.S. 213 n. 13 (1983) (". . . the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."); *Sokolow*, 490 U.S. at 9–10 (paying $2,100 in cash for plane tickets, having large amounts of cash, and flying from Honolulu to Miami for 48 hours was enough to provide reasonable suspicion that drugs were being transported); *U.S. v. Williams*, 929 F.3d 539, 545 (8th Cir. 2019) (evasive answers coupled with expired tags, misrepresentations about where a car was parked, and unwillingness to identify the owner of the car provided officers with reasonable suspicion). For these reasons, a reasonable jury could find that Leonard lacked arguable reasonable suspicion to seize Tapp.

*2. Unlawful Arrest*

Tapp also asserts that his arrest was unlawful. To establish this claim, he must show that Leonard lacked arguable probable cause. *Copeland v. Locke*, 613 F.3d 875, 880 (8th Cir. 2010). "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.'" *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir.2005) (alteration

in original) (quoting *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir.1986)). Arguable probable cause exists when an officer mistakenly arrests a suspect believing it is based in probable cause and that mistake is objectively reasonable. *Robbins*, 984 F.3d. at 680.

Tapp was under arrest at the time he was pulled out of his vehicle. *See United States v. Newell*, 596 F.3d 876, 879 (8th Cir.), cert. denied, 562 U.S. 864, (2010) (a lawful stop becomes an arrest if the stop if officers use unreasonable force). Leonard argues that Tapp's behavior gave him probable cause to arrest him for disorderly conduct, obstructing government operations, and for refusal to submit. Defs.' Br. at 6. While not an exhaustive list, Arkansas law provides that someone engages in disorderly conduct when he recklessly or with the purpose to cause public inconvenience, annoyance, or alarm; engages in tumultuous behavior; makes unreasonable noise; or uses obscene language in a public place in a manner likely to provoke a violent response. Ark. Code Ann. § 5-71-207(a)(1)–(3). Someone obstructs government operations when he knowingly obstructs, impairs, or hinders the performance of any government function. Ark. Code. Ann. § 5-54-102(a)(1). And someone refuses to submit or resists arrest when he knowingly uses or threatens to use physical force or any other means to create a substantial risk of physical injury when law enforcement officers attempt to effectuate an arrest. Ark. Code Ann. § 5-54-103(a)(1)–(2).

The problem with Leonard's arguments is that Tapp did not engage in disruptive or violent behavior, he did not make unreasonable noise, and he did not use obscene language likely to invoke a violent response. *Ward v. City of Sherwood, Arkansas*, 173 F.4th 994, 998

(8th Cir. 2026) (use of profanity where children can hear, aggressive movements, belligerent demeanor, and intimation to take aggressive action enough to support probable cause of disorderly conduct); *Graham v. Cawthorn*, 427 S.W.3d 34, 37–38, 41 (Ark. 2013) (probable cause to arrest a subject for disorderly conduct where an angry and belligerent woman disrupted staff's ability to work in the dispatch area of a sheriff's office, even though she did not act violently, damage property, threaten anyone, approach anyone aggressively, or curse any person); *Johnson v. State*, 37 S.W.3d 191, 195 (Ark. 2001) (erratic behavior, loud cursing, flailing of arms, and clenching of fists was sufficient to support a conviction for disorderly conduct); *Watkins v. State*, 377 S.W.3d 286, 291 (Ark. Ct. App. 2010) (conviction for disorderly conduct affirmed where the defendant cursed at officers and tree-service employees, aggressively ran from person to person confronting them (both inside and outside a designated work area), and caused others to feel intimidated and concerned for their well-being).

Tapp's refusal to identify himself also did not provide probable cause for Tapp to arrest him for obstructing government operations. *Stufflebeam v. Harris*, 521 F.3d 884, 887 (8th Cir. 2008) (Arkansas law does not permit an arrest for refusal to identify oneself when not suspected of other criminal activity). For these reasons, a reasonable jury could find that Leonard lacked arguable probable cause to arrest Tapp.

*3. Excessive Force*

Tapp argues that Leonard also used excessive force against him. To prove this claim, he must show that Leonard used unreasonable force. *Nieters v. Holtan*, 83 F.4th 1099, 1108

(8th Cir. 2023), cert. denied, 144 S. Ct. 1349 (2024). Whether the force used by Leonard complied with the Fourth Amendment depends on whether his actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. *Id.* at 1108. The totality of the circumstances must be considered, including the severity of the crime committed by Tapp, whether Tapp posed an immediate threat to the safety of Leonard or others, and whether Tapp was actively fleeing or resisting arrest at the time the force was used. *Id.* While *de minimus* use of force is not actionable, *de minimus* injury is. *Westwater v. Church*, 60 F.4th 1124, 1129 (8th Cir. 2023).

Pulling someone who has not committed an identifiable crime out of a car and forcing him to the ground violates the Fourth Amendment. Leonard argues he was permitted to use force because Tapp refused commands, remained on the phone, questioned his authority, rummaged through his car, and started the car's engine. Def.s' Br. at 7–8. Leonard points to *Kelsay v. Ernst,* 933 F.3d 975, 980 (8th Cir. 2019) for the proposition that a takedown of a suspect who was walking away from an officer's command was not clearly excessive force. *Kelsay,* however, is distinguished from the facts herein because the officers in *Kelsay* had probable cause for the arrest and the plaintiff in that case had committed an identifiable crime at the time force was used. *Id.* at 978. Leonard also argues that *Ward v. City of Sherwood, Arkansas*, 173 F.4th 994, 1000 (8th Cir. 2026) , is applicable because it held that performing a takedown of a man for refusing to submit to arrest was not clearly excessive. Again, the problem with *Ward* is that the police had probable cause to arrest the man for an

identifiable crime, disorderly conduct, at the time force was administered. *Id.* at 996–97.

The problem for Leonard is that, at the time he removed Tapp from his car, there was no identifiable crime that Tapp was alleged to have committed. And, Leonard's subjective thoughts that there must be some crime in the air was not enough to provide him with a reasonable bases for what ultimately took place. At best, Leonard could have come to the conclusion that Tapp was attempting to leave when he started his car. This, however, is not enough to charge him with attempting to flee when he was not suspected of committing an identifiable underlying crime. *See Boudoin v. Harsson*, 962 F.3d 1034, 1043 (8th Cir. 2020) (use of tazer not excessive on suspect police perceived as attempting to flee when pulled over for speeding); *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (use of force permissible when reasonable officer could have concluded that suspect was drinking and driving was going to continue his flight).

*4. Qualified Immunity*

The next question is whether Leonard is immune from suit. Qualified immunity shields law enforcement officers from civil damages when their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Kelsay,* 933 F.3d at 979.

Qualified immunity does not shield Leonard because Tapp had a clearly established right to be free from seizure without reasonable suspicion, arrest without probable cause and excessive force. *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016) (probable

cause is determined at the time of arrest and any later developed facts are irrelevant); *Brown v. City of Golden Valley*, 574 F.3d 491, 499–500 (8th Cir. 2009) (use of force not objectively reasonable where woman was suspected of committing a crime that was not severe or violent); *U.S. v. Hughes,* 517 F.3d 1013, 1018 (8th Cir. 2008) (government interests in investigating a previous trespass do not outweigh personal liberties when there is no threat to public safety); *Stufflebeam*, 521 F.3d at 888 (no probable cause to arrest man for obstruction of governmental function for failing to identify himself when he was not suspected of criminal activity); *Brown v. Texas*, 443 U.S. 47, 50 (1979) (detention without reasonable suspicion that suspect was engaged in or had engaged in criminal conduct is a violation of the Fourth Amendment). Although Leonard would be immune if he had arguable reasonable suspicion for seizing Tapp or probable cause for arresting Tapp, as explained above, he had neither.

*5. Assault and Battery*

Finally, Tapp argues that Leonard committed an assault and battery against him. These, however, are two distinct claims having distinct elements. To prove his assault claim, Tapp must show that (1) Leonard intentionally placed him in fear of immediate physical harm and (2) Leonard acted with the intent to cause harmful contact to Tapp. *Mann v. Pierce*, 505 S.W.3d 150, 154 (Ark. 2016). To prove his battery claim, Tapp must show Leonard (1) acted with the intent to cause some harmful or offensive contact with him or acted with the intent to create the apprehension of some harmful or offensive contact with him and (2) that this contact resulted in and caused damages. *Mullins v. Helgren*, 638

S.W.3d 864, 872 (Ark. Ct. App. 2022). Summary judgment is denied because a reasonable juror could find that Leonard intentionally used force to remove Tapp from the vehicle and did so with intent to cause harm.

B. Municipal Liability and Official Capacity Claims against Leonard

Summary judgement is granted on Tapp's claims against the City and his official capacity claims against Leonard. Indeed, the claims against Leonard in his official capacity are the equivalent of claims against the City. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

Tapp argues Leonard's interaction with Tapp shows the City failed to properly train or supervise him. Pl.'s Resp. Opp. City Def.s' Mot. Summ. J. at 14, Doc. No. 32. Inadequate training or supervision creates liability for a city when the city's actions show it was deliberately indifferent to the plaintiff's rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). To prove these claims, Leonard must show that the City had notice of a pattern of unconstitutional conduct by Leonard. *Atkinson v. City of Mt. View, Mo.*, 709 F.3d 1201, 1216–17 (8th Cir. 2013) (citing *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir.2010)). No evidence has been presented that the City had any knowledge, before this incident, that Leonard lacked supervision or training. Summary judgment is therefore appropriate.

## IV. CONCLUSION

For these reasons, defendants' motion for summary judgment is denied on all claims against Leonard in his individual capacity and granted on all claims against Leonard in his official capacity and against the City. Dalton Wallace's motion for summary judgment is

granted.

IT IS SO ORDERED this 10th day of August, 2026.

UNITED STATES DISTRICT JUDGE